# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

IN RE:                                                    )
                                                          )
**Michael Allen Miller,**                                 ) Case No. 12-50873-can7
    **Debtor.**                       )
_____)

### MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT

Michael Miller filed this Chapter 7 case *pro se,* as an inmate under the custody of the Missouri Department of Corrections ("MDOC"). He scheduled the MDOC as an unsecured creditor to whom he owed $831.25 for what he described as "Inmate Revolving Fund Debt," or for certain fees the MDOC and the Missouri Board of Probation and Parole (the "Board") had assessed against him before he filed bankruptcy. Mr. Miller subsequently received his discharge. He now reopens the case, asserting that the MDOC violated the discharge injunction by deducting those fees from his "inmate fund account." The MDOC does not dispute that it imposed fees against Mr. Miller prepetition, or that it collected the fees from Mr. Miller after the discharge. Instead, the MDOC argues that the fees constitute a nondischargeable "fine, penalty, or forfeiture" within the meaning of 11 U.S.C. § 523(a)(7), such that collection of them does not violate the discharge injunction.

This matter comes before the Court on Mr. Miller's amended motion for summary judgment, based on undisputed facts. The Court has jurisdiction over this matter, which is a core proceeding. 28 U.S.C. §§ 1334, 157(b)(2)(I). Having reviewed the motion and response, the Court finds the "intervention fees" the MDOC collected from Mr. Miller constitute dischargeable fees for services, and are not nondischargeable fines, penalties or forfeitures under § 523(a)(7).

1

The MDOC therefore violated the discharge injunction as a matter of law. The Court's reasoning follows.

### *Findings of Fact*

At the time Mr. Miller filed bankruptcy, he was incarcerated and under the custody of the MDOC. He owed the MDOC for three types of fees: (1) "electronic monitoring fees"[1] in the amount of $210.00; (2) "housing maintenance fees"[2] of $510.06; and (3) "intervention fees"[3] of $90.00 imposed by the Board. The MDOC deducted some or all of these fees post-discharge from Mr. Miller's inmate fund account, with knowledge of Mr. Miller's bankruptcy filing and his subsequent discharge.

The MDOC now admits that the electronic monitoring fees were imposed in error, and represents that the $210.00 has been restored to Mr. Miller's account. Likewise, the MDOC says it has returned the $510.06 in housing maintenance fees; although not waiving the issue for future cases, the MDOC concedes the argument in this case "given the length of time since impositions of the fees."[4] Mr. Miller has not disputed that these amounts have been returned to him. Therefore, the only issue here is whether the $90.00 in prepetition "intervention fees" constitutes a nondischargeable "fine, penalty or forfeiture" within the meaning of § 523(a)(7).

---

[1] The parties do not discuss the basis for the imposition of "electronic monitoring fees," but it appears these fees are assessed under § 217.430.2(4) RSMo 1995, and are designed to cover the costs of electronic monitoring. The MDOC asserts these fees were charged in error, since Mr. Miller was in the custody of local law enforcement officials at the time the fees were assessed.

[2] "Housing maintenance fees" are imposed under § 217.430.2(4) RSMo 1995, which requires offenders assigned to residential treatment facilities or other community-based sanctions to pay a percentage of their earned wages to an inmate fund, in an amount not to exceed the daily per capita costs for maintenance of all persons committed to the department during the previous fiscal year. The inmate funds are to be used to support offenders in education programs, drug treatment programs, residential treatment facilities, other community-based sanctions, electronic monitoring, or in work or educational release programs. The MDOC charged Mr. Miller for his housing at the Kansas City Community Release Center in 2006.

[3] "Intervention fees" are imposed under § 217.690.3 RSMo 1995, and are discussed in more detail, below.

[4] MDOC Response to Amended Motion for Summary Judgment, p. 3.

*Discussion*

A motion to determine whether a creditor has violated the discharge injunction is a contested matter. Fed. R. Bankr. P. 9014. Fed. R. Civ. P. 56, governing summary judgment, is incorporated in Fed.R.Bankr.P. 7056, and is applicable to contested matters. Rule 9014(c). Rule 56 authorizes the Court to grant summary judgment "if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."[5]

11 U.S.C. § 523(a)(7) provides that the discharge under § 727 does not discharge an individual debtor from any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss," with the exception of certain tax penalties (not relevant here). The "fine, penalty, or forfeiture" exception to discharge is automatic, meaning that the governmental unit to whom the debt is owed need not object to the bankruptcy proceeding in order to preserve the nondischargeability of the debt. *Cf*. 11 U.S.C. § 523(c)(1).[6] Section 524(a)(2) of the Bankruptcy Code provides that a discharge operates as an injunction against acts to collect discharged debts. A bankruptcy court may use its § 105(a) contempt powers to enforce the § 524(a) discharge injunction and to order damages for contempt.[7]

*Arguments of the Parties*

In this case, Mr. Miller argues that the intervention, housing and related fees were not imposed as part of his criminal sentence, and therefore that such fees are not penal in nature. Pointing to a Missouri Supreme Court case that describes such fees as for "current and future

---

[5] *In re Paul*, 739 F.3d 1132, 1134-35 (8th Cir. 2014).

[6] By contrast, debts of a kind specified in §§ 523(a)(2) [fraud], (a)(4) [breach of fiduciary duty, larceny, or embezzlement] or (a)(6) [willful and malicious injury] are discharged unless the creditor files a timely complaint to determine dischargeability under Fed. R. Bankr. P. 4007.

[7] *E.g., Bessette v. Avco Servs., Inc*., 230 F.3d 439, 445 (1st Cir. 2000).

3

services rendered,"[8] Mr. Miller contends that these fees are merely compensation for pecuniary loss, since the fees are imposed to cover the MDOC's and the Board's costs for providing various services to inmates and offenders. The MDOC, for its part, candidly acknowledges that the fees do reimburse the State for part of its costs. It argues, in essence, that although the fees are civil rather than criminal in nature, such fees are nonetheless assessed against offenders as part of the administration of the criminal justice system. And, the MDOC notes, failure to pay such fees may be punished by revocation of probation, parole or supervised release, as well as further incarceration. Thus, according to the MDOC, it is irrelevant that no court imposed the fees as part of a criminal sentence; the fees were imposed to further penal goals – penal goals that would be thwarted if Mr. Miller were permitted to discharge the fees.

Thus, before delving into the language of § 523(a)(7), the Court needs to examine the nature of intervention fees under Missouri law.

*The Nature of Missouri's "Intervention Fees"*

The parties do not dispute the State's authority to impose fees against offenders, and agree that the State may use the fees to provide community services to assist offenders in, among other uses, completing probation, parole, or conditional release.

The so-called "intervention fees" are imposed under the authority of § 217.690 RSMo 1995. This statute is part of the provisions regarding the powers and duties of Missouri's Probation and Parole Board. Subsection 217.690.1 authorizes the Board to release or parole certain offenders when, in the Board's opinion, there is a reasonable probability that an offender can be released without detriment to the community or himself. Subsection part 2 makes clear

---

[8] *Jackson v. Members of the Missouri Board of Probation & Parole*, 301 S.W.3d 71 (Mo. banc 2010).

that an offender while on parole remains in the legal custody of the department of corrections but is still subject to the orders of the Board.

Subsection 217.690.3 provides the authority for imposing the fees in this case. That subsection provides:

> The board has discretionary authority to require the payment of a fee, not to exceed sixty dollars per month, from every offender placed under board supervision on probation, parole, or conditional release, to waive all or part of any fee, to sanction offenders for willful nonpayment of fees, and to contract with a private entity for fee collection services.

This subsection goes on to specify that the fees may be used for various programs and services to assist the offender:

> The fees collected may otherwise be used to provide community corrections and intervention services for offenders. Such services include substance abuse assessment and treatment, mental health assessment and treatment, electronic monitoring services, residential facilities services, employment placement services, and other offender community corrections or intervention services designated by the board to assist offenders to successfully complete probation, parole, or conditional release.

Finally, § 217.690.4 RSMo 1995 also authorizes the Board to adopt rules with respect to the eligibility of offenders for parole, the conduct of parole hearings, and the conditions to be imposed upon parole offenders. The rule that has been promulgated pursuant to this authority is 14 CSR § 80-5.020.

14 CSR § 80-5.020 of the Mo. Code of State Regulations, provides that, "[e]xcept as provided in subsections (1)(E), (F), (G), and (H), all offenders placed under probation, parole or conditional release supervision of the Board of Probation and Parole are required to pay an intervention fee…[.]" Offenders are not charged intervention fees during the first 90 days of release [(1)(E).1]; if the case is pre-trial, or a drug court, or deferred prosecution case [(1)(E).2];

5

if the offender has been transferred outside of Missouri [(F)]; or if they have insufficient income [H]. 14 CSR § 80-5.020(1).

14 CSR § 80-5.020 also addresses consequences for nonpayment of the fees. If the offender fails to pay the intervention fees, an escalating scale of punishment is prescribed. First, the offender's supervising officer is to remind the offender of the unpaid fees at the next contact. 14 CSR § 80-5.020(I).1. Next, the supervising officer is to "direct the offender to specific programs or services that will assist him/her in addressing their [sic] inability to pay (i.e., financial management program, employment counseling and/or job seeking classes, substance abuse counseling, mental health counseling, etc.)." 14 CSR § 80-5.020(I).2. When a willful nonpayment has occurred for more than 90 days, the supervising officer "shall submit a notice of citation or violation report." 14 CSR § 80-5.020(I).3. Sanctions for willful nonpayment include a written reprimand, travel restriction, community service, increased level of supervision, and shock detention. 14 CSR § 80-5.020 (I).6.

Very few cases address the nature of intervention fees under Missouri law. The Supreme Court of Missouri has, however, examined whether imposing intervention fees against an offender already punished and on parole violates Missouri's Constitution as a law retrospectively applied.[9]

In *Jackson v. Member of the Missouri Board of Probation & Parole*,[10] the Missouri Supreme Court en banc held that imposition of the fees against a previously punished parolee

---

[9] Mo. Const. art I, § 13 provides: "That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation ... can be enacted.").

[10] *Jackson v. Members of the Missouri Board of Probation & Parole*, 301 S.W.3d 71 (Mo. banc 2010).

6

*was not* unconstitutional under Missouri law since the fees were for services and not charged retroactively but only currently and prospectively:

> The new fee for parole services does not change the effect of [the offender's] conviction or his prior parole status. It does not create a new obligation, impose a new duty, or attach a new disability in respect to past transactions or considerations. *It is a fee for current and future services rendered.*[11]

After the plaintiff in *Jackson* lost before the Missouri Supreme Court, he filed an action before the United States District Court for the Eastern District of Missouri, asserting that imposition of the intervention fees was a violation of the United States Constitution. The District Court, in a thorough, albeit unpublished opinion, noted that the Missouri legislature had not stated its specific intent when authorizing the fee, nor had it provided any comprehensive legislative history, given that the legislature does not generally publish its committee reports or transcribe hearings.[12] The District Court did note that the former Missouri Governor had issued a press release on the day he signed L.2005 H.B. 700, proclaiming that "[t]he fee is a good example of appropriate cost sharing and will provide needed funding for corrections services at the expense of offenders ... It just makes sense that offenders should have a hand in paying for the services they receive."[13]

The District Court in *Jackson* agreed that the intervention fees were not penal and thus did not constitute unconstitutional retroactive punishment under the United States Constitution. Rather,

---

[11] *Jackson,* 301 S.W.3d at 72 (emphasis added). *Accord Little v. McSwain*, 400 S.W.3d 461, 461 (Mo. App. E.D. 2013).

[12] *Jackson v. Chairman and Members of Missouri Bd. of Probation and Parole*, No. 4:10CV104, 2010 WL 5070722 (E.D. Mo. Dec. 7, 2010).

[13] Press Release, Matt Blunt, Governor, State of Missouri (June 21, 2005), 2005 WLNR 9849179; *Jackson*, 2010 WL 5070722, at * 4.

7

> [t]he plain language of the statute and post-enactment statements of the former Governor show the statute is civil in nature and was not intended to be punitive. With respect to the second factor in the *Ursery* test, this fee is not "so punitive in fact" that the law "may not legitimately be viewed as civil in nature." *See [United States v.]Usery,* 518 U.S [267] at 288 [1996]. Specifically, it is discretionary, reasonably related to legitimate penological goals such as rehabilitation, and is not excessive. Therefore, the fee is not an additional punishment, and Jackson cannot state a claim upon which relief can be granted under the Ex Post Facto Clause.[14]

The parties in this case do not address *when* the Board imposed the $90.00 in intervention fees against Mr. Miller. Obviously, Mr. Miller must have been released on probation or parole sometime prior to the filing of his bankruptcy, but was no longer on probation or parole at the time he filed, since at the time of filing and thereafter, Mr. Miller was incarcerated. For the purposes of summary judgment, however, *when* the Board imposed the intervention fees is not material to the issues, so long as it is undisputed – as it is – that the fees were imposed prepetition.[15]

*Threshold Discussion of § 523(a)(7)*

Whether "intervention fees" assessed by a state parole and probation board against an offender are nondischargeable within the meaning of § 523(a)(7) is an issue of first impression. The parties cite no authorities on point, and the Court finds none.

As always, then, the Court must begin with an analysis of the pertinent statutory language in § 523(a)(7) – language that has been described as admittedly "subject to interpretation."[16] The parties agree that intervention fees are fees payable "to and for the benefit of a governmental unit,"[17] and thus meet one of the three qualifiers set forth in § 523(a)(7). Whether intervention

---

[14] *Jackson,* 2010 WL 5070722, at *5 (cites omitted).

[15] Postpetition obligations are not dischargeable. *See* 11 U.S.C. § 524.

[16] *Kelly v. Robinson*, 479 U.S. 36, 50 (1986).

[17] Mr. Miller has not argued that the Missouri Board of Probation & Parole is not a governmental entity. This Court believes it clearly is.

8

fees constitute a "fine, penalty, or forfeiture" and are "not compensation for actual pecuniary loss" is, however, a more difficult question. The Court addresses the elements of "fine, penalty, or forfeiture" and "not compensation for actual pecuniary loss" in turn.

***"Fine, Penalty, or Forfeiture"***

The Code does not define the terms "fine," "penalty," or "forfeiture." Courts approach the interpretation of these terms in varying ways. Some courts do not bother to define the terms "fine," "penalty," or "forfeiture" at all. When the obligation at issue has been imposed as part of a criminal sentence, courts uniformly find the obligation to be penal in nature and thus without question a "fine, penalty, or forfeiture." The best example is the seminal case of *Kelly v. Robinson*.[18]

In *Kelly*, the Unites States Supreme Court examined whether restitution was nondischargeable. The Court explained that § 523(a)(7) codified a "judicially created exception" protecting against the discharge of what it termed "traditional criminal fines."[19] Although not defining "traditional criminal fine," the Supreme Court went on to consider § 523(a)(7)'s protection from discharge, not in the context of fines, but of a restitution obligation imposed as a condition of probation.

Observing that § 523(a)(7) on its face creates a broad exception for all penal sanctions, whether denominated a fine, penalty, or forfeiture, the Supreme Court in *Kelly* held that § 523(a)(7) "preserves from discharge *any* condition a state criminal court imposes as part of a criminal sentence."[20] The Supreme Court pointed out that the notion that bankruptcy courts could

---

[18] *Kelly*, 479 U.S. 36 (1986).

[19] *Kelly*, 479 U.S. at 51.

[20] *Kelly*, 479 U.S. at 50 (emphasis added).

9

not discharge criminal judgments was the established state of the law – so established that the Court expressed "serious doubts" whether a criminal penalty could even constitute a "debt" as defined by the Bankruptcy Code.[21]

The Court did not decide that question, however. Given the strong interests of the states in formulating and enforcing penal sanctions, allowing a bankruptcy court to discharge criminal obligations could "lead to federal remission of judgments imposed by state criminal judges…" and in turn "hamper the flexibility of state criminal judges in choosing the combination of imprisonment, fines, and restitution most likely to further the rehabilitation and deterrent goals of state criminal justice systems."[22] The Supreme Court found no evidence that Congress had intended to change the law when it enacted § 523(a)(7).[23] Therefore, the Court found, treating restitution orders as nondischargeable debts best effectuated the will of Congress.[24]

Courts interpreting § 523(a)(7) since *Kelly* have expanded its holding. The Eighth Circuit, in line with many other courts, applied *Kelly,* not just to restitution orders entered by state courts as part of a criminal sentence, but also to federal court sentences.[25] Other courts have further extended § 523(a)(7) to encompass civil obligations in addition to criminal ones, so long as such civil obligations are penal in nature.[26]

---

[21]   *Kelly*, 479 U.S. at 50 (citing former 11 U.S.C. § 101(4), now § 101(12)).

[22]   *Kelly*, 479 U.S. at 49.

[23]   *Kelly*. 479 U.S. at 53.

[24]   *Kelly*, 479 U.S. at 50.

[25]   *United States v. Vetter*, 895 F.2d 456, 459 (8th Cir. 1990). *See also In re Neil*, 131 B.R. 142 (Bankr. W.D. MO. 1991) (a fine imposed as part of a drug offense sentence is imposed in furtherance of society's interest in rehabilitation and punishment, an interest that underlies the criminal statutes; rejecting the debtor's argument that the fine is compensation for actual, pecuniary loss).

[26]   *E.g., In re Smith*, 317 B.R. 302 (Bankr. D. Md. 2004); *See also Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 562 (1990) (§ 523(a)(7) applies to both criminal and civil fines). *But see In re Gi Nam*, 273 F.3d 281, 287 (3rd Cir. 2001) ("We do not interpret *Kelly* to imply that the 'fine, penalty or forfeiture'

Thus, if the intervention fees had been imposed as part of Mr. Miller's criminal sentence, the analysis would stop here, since, under *Kelly*, such obligations always constitute a "fine, penalty, or forfeiture" within the meaning of § 523(a)(7). In this case, however, the parties agree that the intervention fees were not imposed as part of Mr. Miller's criminal sentence. This Court must then parse more carefully what a "fine, penalty, or forfeiture" is.

At the threshold, this Court observes that there is little discussion in the cases as to what law controls the definitions of the terms "fine, penalty, or forfeiture." The Supreme Court did not address the issue in *Kelly* or in its subsequent decision in *Pennsylvania Dept. of Public Welfare v. Davenport*.[27]

Courts approach this thorny issue in various ways. The first approach, exemplified by *In re Thompson*,[28] cited by the MDOC, is to focus on the character of the obligation under bankruptcy and not state law. In *Thompson*, for example, the Fourth Circuit held the costs for prosecuting a criminal case, imposed as part of the criminal sentence -- but costs repeatedly held to be non-penal under applicable Virginia law -- were nonetheless nondischargeable under § 523(a)(7). Although state law described the costs as non-penal, the *Thompson* court reasoned that since "it is only the defendant who is convicted that must pay those costs…, for the purpose of federal bankruptcy law, the assessment is 'part' of the sentence" and therefore nondischargeable.[29].

---

prong of § 523(a)(7) is restricted in scope to except from dischargeability only obligations of a penal nature"; holding that a chapter 7 debtor's obligation as surety on a bail bond for his son was excepted from discharge under § 523(a)(7)). *Contra In re Collins*, 173 F.3d 924 (4th Cir. 1999) (bond forfeiture dischargeable; not penal in nature).

[27] *Davenport*, 495 U.S. 552 (1990). *Davenport* addressed whether a restitution obligation is a "debt" and therefore dischargeable under the then-applicable provisions of § 1328, which did not preserve "fines, penalties, or forfeitures" from discharge. It has now been effectively overruled by subsequent statutory amendments.

[28] *Thompson*, 16 F.3d 576 (4th Cir. 1994).

[29] *Thompson*, 16 F.3d at 581.

Other courts, while noting that federal law determines whether a debt is a "fine, penalty or forfeiture," conversely look to state law to decide whether the obligation at issue possesses the requisite attributes.[30] Some courts, although not explicitly relying on state law, find state law labels at least "helpful."[31]

Surprisingly few cases resort to dictionary definitions of "fine," "penalty," and "forfeiture."[32] Indeed, some courts dictate that we not focus specifically on the phrase "fine, penalty, or forfeiture," at all, instead suggesting "'we must not be guided by a single sentence or member of a sentence, but ... [by] the provisions of the whole law, and to its object and policy.'"[33] And, in fact, in the Fifth Circuit, courts are directed *not* to consider the dictionary definitions of "fine, penalty or forfeiture," at least standing alone.[34]

In *In re Soleau*, the Fifth Circuit examined whether a bail bondsman could discharge obligations on forfeited bonds owed to the state when various criminal defendants absconded.

---

[30] *E.g., In re Jensen*, 395 B.R. 472, 481 (Bankr. D. Colo. 2008) (holding that civil restitution assessments levied against debtors for violation of state and federal consumer protection acts were intended to punish and deter, and were therefore nondischargeable penalties within the meaning of § 523(a)(7)). *But see In re Parsons*, 505 B.R. 540 (Bankr. D. Haw. 2014) (disagreeing with *Jensen*; determining that civil restitution claims are nondischargeable is inconsistent with the plain meaning of § 523(a)(7); contravenes the notion that exceptions to discharge should be construed narrowly; and leads to the "illogical result that claims asserted directly by a victim are dischargeable but the exact same claims asserted by a state agency for the benefit of the victim are not.").

[31] *In re Gi Nam*, 273 F.3d 281 (3d Cir. 2001) ("Although the label that state law affixes to a certain type of debt cannot of itself be determinative of the debt's character for purposes of the federal dischargeability provisions, such state-law designations are at least helpful to courts in determining the generic nature of such debts under the law that most directly governs their creation, e.g., whether they are penal or civil, fines or forfeitures.").

[32] According to Black's Law Dictionary (9th ed. 2009), a "fine" is defined as a "pecuniary criminal punishment or civil penalty payable to the public treasury." A "penalty" is "punishment imposed on a wrongdoer, usually in the form of imprisonment or fine; especially a sum of money exacted as punishment for either a wrong to the state or a civil wrong (as distinguished from compensation for the injured party's loss)." A "forfeiture" is the "divestiture of property without compensation; the loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty; or something (especially money or property) lost or confiscated by this process; a penalty."

[33] *In re Schaffer*, 515 F.3d 424, 427 (5th Cir. 2008) (citing *In re Hickman*, 260 F.3d 400, 403, 405, quoting *Kelly v. Robinson*, 479 U.S. at 43, and holding that the mere label of a bail bond as "forfeited" does not place the money owed under § 523(a)(7)'s definition of "forfeiture.").

[34] *In re Soleau*, 488 F.3d 302 (5th Cir. 2007).

Under a dictionary definition of "forfeiture," the Fifth Circuit said, the bondsman's obligation to the state would be nondischargeable under § 523(a)(7).[35] The Circuit observed, however, that the meaning of "forfeiture" in the context of § 523(a)(7) must be understood in light of its relationship to the other nouns in that section's exclusive list, *i.e.,* "fine" and "penalty." The *Soleau* Court explained that Congress had synonymized all three terms in § 523(a)(7):

> Although these definitions alone might leave open the possibility that the type of judgment debt at issue here should be considered a forfeiture for purposes of § 523(a)(7), Congress's synonymizing use of 'forfeiture' with 'penalty' and 'fine' supports [our] more narrow interpretation of this section as applicable only to takings grounded in wrongful acts and effectuating a punishment therefor.[36]

By contrast, the Third Circuit eschewed the synonymization approach. In the same context as the Fifth Circuit addressed in *Soleau* – whether a bail bondsman could discharge debts owed to the state for forfeited bonds – the Court in *In re Gi Nam*[37] rejected the notion that "forfeiture" was to be understood in conjunction with "fine" and "penalty" and therefore had to be penal to be nondischargeable. This interpretation of § 523(a)(7) conflicted with the "plain language" of the section; "[n]othing in that language equates a forfeiture with a penalty." "Quite the contrary," the Third Circuit reasoned, "'penalty' and 'forfeiture' are two distinct terms within the phrase 'fine, penalty, or forfeiture.'"[38]

In sum, courts interpreting § 523(a)(7) reach no consensus about when and whether to defer to state law or when and whether the terms "fine, penalty, or forfeiture" are read independently or construed as a whole. So, leaving the nature of "fine, penalty, or forfeiture"

---

[35] *Soleau*, 488 F.3d at 310.

[36] *Soleau*, 488 F.3d at 310-11.

[37] 273 F.3d 281 (3d Cir. 2001).

[38] *Gi Nam*, 273 F.3d at 286.

aside, does addressing the second prong of § 523(a)(7) -- the "not compensation for pecuniary loss" -- aid in our understanding?

*"Not Compensation for Actual Pecuniary Loss"*

The MDOC points out that, pursuant to the express provisions of § 217.690.3 RSMo 1995, intervention fees are paid into a fund maintained by the Missouri State Treasurer, and that use of the funds are governed by legislative appropriation. Since this is not a direct reimbursement from the offender to the Department of Corrections, the MDOC argues that the fees cannot be "compensation for actual pecuniary loss." In the alternative, the MDOC notes that even if the fees in part reimburse the state for its costs, the fact of reimbursement should not "bar the Department from the relief it seeks."

Courts' discussion of this second element of § 523(a)(7) can be similarly as muddled as the discussion of whether an obligation is a "fine, penalty, or forfeiture." In its discussion of restitution, for example, the Supreme Court in *Kelly*, reasoned that "[b]ecause criminal proceedings focus on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation, we conclude that restitution orders imposed in such proceedings operate 'for the benefit of' the State."[39] "Similarly," says the Court, "they are not assessed "for ... compensation of the victim."[40] The Supreme Court noted that the decision to impose restitution generally did not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant.[41] Citing the Connecticut restitution statute at issue, the

---

[39] 479 U.S. at 53.

[40] 479 U.S. at 53.

[41] 479 U.S. at 53.

Court observed that the criminal court was not required to impose restitution in the amount of the harm caused. "Instead, it provides for a flexible remedy tailored to the defendant's situation."[42]

Cases following *Kelly* also proclaim "that so long as the government's interest in enforcing a debt is *penal,* it makes no difference that injured persons may thereby receive compensation for pecuniary loss."[43] "In other words, the 'not compensation for actual pecuniary loss' phrase in § 523(a)(7) refers to *the government's* pecuniary loss."[44] As explained in *Cost Control Marketing & Sales:*

> For example, a person drives recklessly and collides with a city garbage truck. A city policeman issues him a traffic ticket, and the city attorney files a negligence suit and obtains a judgment for the amount of damage to the garbage truck. The person can discharge the judgment for damaging the truck, but he cannot discharge his reckless driving fine. We therefore agree with the district court that the judgment in this case is not dischargeable in a Chapter 7 bankruptcy proceeding. *Even where a debt is intended to help defray the expense of government, it may not be dischargeable if its primary purpose is penal.*[45]

### *Law Applied to the Facts in This Case*

The majority of cases seem to suggest that the qualifiers "fine, penalty, or forfeiture" and "not compensation for pecuniary loss" are read together, such that *both* require an obligation to be penal for the obligation in order to be nondischargeable under § 523(a)(7). Indeed, this Court did not find a case where a "fine, penalty, or forfeiture" that was determined to be penal in nature was not otherwise considered to be "not compensation for pecuniary loss" and vice versa. That being so, it suggests to this Court that the focus on any given obligation considered under §

---

[42] 479 U.S. at 52-53.

[43] *E.g.*, *U.S. Dept. of Housing & Urban Development v. Cost Control Marketing & Sales,* 64 F.3d 920, 927 (4th Cir. 1995) (emphasis in original).

[44] *U.S. Dept. of Housing & Urban Development,* 64 F.3d at 927.

[45] *U.S. Dept. of Housing & Urban Development,* 64 F.3d at 927, *citing In re Thompson*, 16 F.3d 576 (4th Cir. 1994) (emphasis added).

523(a)(7) should be, primarily, whether it is intended to be penal. Nonetheless, such a focus does not aid this Court in determining when and whether to apply state law in assessing whether a particular obligation is "penal," particularly where, as here, the Missouri state courts have emphatically declared the obligation to be civil and not penal in nature.

In the absence of consensus, this Court feels constrained to follow the interpretive lead of analogous cases in this Circuit. In *In re Wilson*,[46] the Eighth Circuit B.A.P. was required to interpret the term "conviction" for purposes of whether restitution was discharged under § 1328(a)(3). The B.A.P. held that, absent explicit Congressional intent to incorporate state law, the meaning of a term in a federal statute is a question of federal law, and the state label is not controlling.[47] In addition, we are directed, when no statutory definition is available, to give effect to legislative intent as reflected in the plain language of the statute, and to in turn determine legislative intent by giving an undefined word its plain and ordinary meaning as found in a dictionary.[48] And, in interpreting the language of §527(a)(7), courts must examine the purpose of the underlying obligation and to consider "the true nature" of the debt.[49] Finally, this Court is mindful that exceptions to discharge are to be construed narrowly to effectuate the rehabilitative purpose of the discharge.[50]

---

[46] 252 B.R. 739, 742-43 (B.A.P. 8th Cir. 2000).

[47] *See Wilson*, 252 B.R. at 742–43.

[48] *In re Hardy*, 503 B.R. 722, 725 (B.A.P. 8th Cir. 2013).

[49] *E.g., In re Buckallew*, 172 B.R. 927, 933 (Bankr. W.D. Mo. 1994) (determining that purpose of the contempt order was compensatory and primarily for the benefit of the creditor and not the government, and therefore was dischargeable). *See also In re Strong*, 305 B.R. 292 (B.A.P. 8th Cir. 2004) (fines levied against debtor were to encourage him to comply with an environmental clean-up order, and therefore were clearly punitive in nature).

[50] *E.g.*, *In re Long*, 774 F.2d 875, 879 (8th Cir. 1985).

With these principles in mind, this Court agrees with those cases that focus on the nature of fines, penalties, and forfeitures as in essence "takings grounded in wrongful acts and effectuating a punishment therefor."[51] This approach best accords with dictionary definitions of fine, penalty, and forfeiture, which describe "fine" as a "pecuniary criminal punishment or civil penalty payable to the public treasury; a "penalty" as a "punishment imposed on a wrongdoer, usually in the form of imprisonment or fine…" and equate "forfeiture" with "penalty," as in a "divestiture of property without compensation, or the loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty.[52]

By contrast, it is undisputed here that the MDOC imposed intervention fees on Mr. Miller not to punish him but for services to assist his transition from prison to civil society. And, this is not a case in which an offender seeks to discharge a victim's reparation rights. This is not a case in which there is danger of a federal court remitting a state court criminal sentence. This is a case where the Board exercised its discretion and imposed intervention fees - fees that neither fit within the definition of fine, penalty, or forfeiture, nor serve the same penal purpose.

Yes, under the theory of the *Thompson* case, it is true that only offenders will ever have to pay an intervention fee. Nonetheless, *Thompson* involved an obligation imposed as part of a criminal sentence that the State, for whatever reason, determined not to be penal. The State's determination, the *Thompson* court held, was not controlling because it was developed outside of bankruptcy law and "addresses issues completely different from the issue of dischargeability."[53] The *Thompson* court then, pierced through form to substance, and appropriately found that the

---

[51] *Soleau*, 488 F.3d at 310-11.

[52] *Black's Law Dictionary* (9th ed. 2009).

[53] *Thompson*, 16 F.3d at 579.

17

bankruptcy court could not properly discharge what was in essence criminal obligation, notwithstanding how the State described it.

Even if, as the MDOC urges, this Court should apply *Thompson* and ignore the fact that the State of Missouri deems the intervention fees as civil, the Court is not persuaded that it leads to the same result. Here, the State of Missouri – for whatever reason – denominates the fees as "civil" and intended for compensation of the State's costs. The State's determination has been affirmed by state and federal courts of this State. And, in piercing through the form to the substance of the fees, it is clear to this Court that nothing in Missouri's statutory or regulatory scheme evidences an intent to impose the fees against Mr. Miller to punish him. This Court thus rejects the MDOC's argument that intervention fees ipso facto must be penal in nature simply because they were imposed as part of a criminal justice system, or that *Thompson* would dictate that result. That approach ignores the State of Missouri's intent to recoup its costs in imposing these fees, as well as the dictionary definition requirement that a "fine, penalty or forfeiture" constitute a debt imposed as a punishment.

Nor does the mere fact that Mr. Miller could be punished civilly or criminally for failing to pay the intervention fee transform the fee into something "penal." If that were the test, many civil judgments could be construed as "fines, penalties or forfeitures," since, under certain circumstances, civil judgment debtors may also be subject to civil and criminal punishments relating to judgments.[54] To hold so broadly would offend the well-settled principle of narrowly construing exceptions to discharge.

### *Conclusion*

The Court holds that the intervention fees imposed on Mr. Miller do not constitute a "fine, penalty or forfeiture" since the purpose of imposing the fees is not penal in nature. In

---

[54] *E. g.*, § 513.380 RSMo 1993 (authorizing court to punish judgment debtors for contempt).

addition, the intervention fees are intended by the State of Missouri to compensate the State for its actual pecuniary losses in providing services to assist Mr. Miller. Mr. Miller has therefore met his burden of establishing that he is entitled to judgment as a matter of law. Based on the undisputed material facts, the intervention fees that had accrued prior to Mr. Miller's bankruptcy filing on December 4, 2012 were discharged by his discharge order entered on April 9, 2013. The MDOC's admitted collection of those discharged fees after the discharge order violates 11 U.S.C. § 524(a)(2). However, Mr. Miller has presented no evidence of any damages, other than an offset of his inmate account in the amount of $90.00. And, Mr. Miller has not presented any evidence that the MDOC's actions were malicious in nature. The Court therefore grants Mr. Miller's Amended Motion for Summary Judgment, and orders that the MDOC restore the $90.00 to Mr. Miller's account forthwith, but declines to impose any other sanction against the MDOC. A separate judgment shall issue.

**SO ORDERED** this 15th day of May, 2014.

/s/ Cynthia A. Norton
HONORABLE CYNTHIA A. NORTON
UNITED STATES BANKRUPTCY JUDGE

cc: Court to Serve Parties Not Receiving Electronic Notice